# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

Plaintiff,

**v.** **Case No. 16-CR-162**

**PHOUA VANG,**

Defendant.

## RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

On April 16, 2015, an inspector with the United States Postal Service intercepted a package sent via express mail from California to Wisconsin because it supposedly fit the profile of a drug parcel. Based on his research, the postal inspector believed that the return address on the package did not exist. When the postal inspector attempted to deliver the package, the resident living at the recipient address disclaimed any interest in it. The postal inspector then opened the package without a warrant, believing it had been abandoned, and inside he found more than one kilogram of methamphetamine. Subsequent investigation revealed that the package had been sent from Fresno, California, by Phoua Vang. She was charged in this district with distributing and attempting to distribute methamphetamine.

Ms. Vang has moved to suppress the contents of the package, arguing that the postal inspector violated the Fourth Amendment when he opened the package

without a warrant. The United States opposes the motion, arguing that the postal inspector reasonably believed that the package was abandoned and that the contents of the package inevitably would have been discovered by law enforcement. For the following reasons, the Court finds that the United States has failed to establish by a preponderance of the evidence that a reasonable postal inspector would believe that Ms. Vang relinquished her property interest in the package or, alternatively, that law enforcement inevitably would have found the methamphetamine. The Court therefore will recommend that the district judge grant Ms. Yang's suppression motion.

## I. Factual Background

Jeffrey Metke has worked as an inspector for the United States Postal Service for approximately two years. *See* Transcript of Evidentiary Hearing 5, ECF No. 26. Prior to that he spent over twenty years in law enforcement, working primarily on drug-trafficking investigations. Tr. 5–6. As a postal inspector, Mr. Metke specializes in prohibited mail narcotics—that is, removing suspected drug parcels from the mail stream. Tr. 6. Some of the characteristics he looks for in determining whether a particular package may be a drug parcel include: the states where the package was shipped from and to; the shipping timeframe; the amount of money spent on shipping; whether a return signature is requested; and the weight of the package. *See* Tr. 8–13.

On April 16, 2015, Mr. Metke recovered a package flagged for investigation from the USPS Distribution Facility in Milwaukee. Stipulated Facts for Evidentiary

Hearing No. 1, ECF No. 20; *see also* Tr. 13–18, 23–26; United States' Hearing Exhibit 1. The mailing label on the package listed the sender and recipient as follows:

| FROM: | TO: |
|---|---|
| Lisa Yang | Mike Chung |
| 1112 n. Ficher #101 | 1608 N. 33rd St. |
| Fresno, CA 93702 | Milwaukee, Wi 53208 |

*See* United States' Hearing Exhibit 2. The label did not list a telephone number for the sender or the recipient, despite having a space for that information. U.S.'s Ex. 2; Stipulated Facts No. 5. The package was dropped off at a California post office within zip code 93701 on Wednesday, April 15, 2015, at 10:46.[1] U.S.'s Ex. 2; Stipulated Facts No. 3. It was sent via express mail through USPS, meaning delivery was guaranteed by 10:30 a.m. the following day. Stipulated Facts Nos. 2–3. The package weighed fourteen pounds, four ounces and cost $107.30 to ship. Stipulated Facts Nos. 2, 4. The sender did not request a signature upon delivery, U.S.'s Ex. 2, even though that service was free due to the cost of shipping, Tr. 17.

After recovering the package from the Distribution Facility, Mr. Metke researched the information listed for the sender and the recipient. He determined that 1608 North 33rd Street was a valid address in Milwaukee, *see* Stipulated Facts No. 6, but there was no record of a Mike Chung associated with that address, Tr. 18–20. In fact, no one with the name Mike (or Michael) Chung had ever registered a vehicle or requested a driver's license or identification card in Wisconsin. Tr. 20–21.

[1] The sender of the package did not mark the "AM" or "PM" checkbox.

Mr. Metke also determined that 1112 North Ficher Street was not a valid address in Fresno and that a Lisa Yang was not associated with that address. Tr. 21–23.

Mr. Metke researched the Ficher Street address using the USPS address database, Google Maps, Yahoo, and the Thompson Reuters CLEAR database. *See* Affidavit submitted in support of Criminal Complaint in Case No. 16-mj-811 ¶ 6, ECF No. 1; *see also* Tr. 23. Although Ficher Street does not appear to exist in Fresno, a Google Maps search for "1112 n. Ficher #101, Fresno, CA 93702" returns a valid address for "1112 North **Fisher** Street #101, Fresno, CA 93702." *See* Defendant's Hearing Exhibits C–D, F (emphasis added). The same is true when searching Yahoo for "1112 n. Ficher #101, Fresno, CA 93702." *See* Defendant's Hearing Exhibits E, K. At the evidentiary hearing, Mr. Metke could not recall whether either search engine showed results for the valid Fisher Street address during his initial research. Tr. 57–60.

The same day he recovered the package and conducted his research, Mr. Metke attempted delivery at the 33rd Street address in Milwaukee. Tr. 26–28; Stipulated Facts Nos. 7–8. A woman answered the door and indicated that neither Mike Chung nor any other Chung lived at that residence. She further stated that she did not know anyone in Fresno or California, the package did not belong to her, and USPS could open the package. Mr. Metke then opened the package and found more than one kilogram of pure methamphetamine in a clear vacuum-sealed package. Stipulated Facts No. 9; Tr. 28. He never applied for a search warrant and

did not subject the package to a dog sniff prior to opening it, even though an officer at the scene had a canine unit with him. Tr. 53–55.

Subsequent investigation linked the package to Phoua Vang of Fresno, California. Ms. Vang's fingerprints were recovered from the packaging surrounding the methamphetamine. Stipulated Facts No. 9; Compl. ¶¶ 18–20. She was eventually arrested and admitted to mailing the package from California to Milwaukee. Stipulated Facts No. 10; *see also* Defendant's Hearing Exhibit B.

Mr. Metke continued to investigate after opening the package and finding the methamphetamine. He learned that the package had been paid for in cash and that no one had registered to obtain tracking information for the package or called USPS to inquire about the package. Tr. 43–44. Mr. Metke also learned that 1112 North Fisher Street #101 is an actual address in Fresno, California, within zip code 93702. Tr. 32–33. He determined, however, that neither Lisa Yang nor Phoua Vang was associated with that address. Tr. 33–40; *see also* United States' Hearing Exhibits 3–5.

At the evidentiary hearing, Mr. Metke explained why he opened the package without first obtaining a warrant. He indicated that the package was undeliverable to the 33rd Street address and not returnable to Ms. Yang in Fresno, California. Tr. 40–43. The mailing label did not contain a telephone number for Ms. Yang, the listed sender of the package. Also, because the package was shipped via express mail and delivery was not made on time, USPS owed the sender the shipping cost.

The package therefore would not simply be left at the return address, and the sender would have had to fill out a form to obtain the refund. Tr. 42–43, 68–70.

Mr. Metke testified, however, that the sender also could get the package back by presenting a copy of the mailing label and, depending on the delivery person, some form of identification. Tr. 68–70,[2] 83–88. When a package is mailed via USPS, it is scanned upon delivery (or attempted delivery). Tr. 70–71, 81–82. For example, a package that is not delivered to the listed address is scanned as "undeliverable as addressed" or "undeliverable as mailed." Tr. 70. The mailing label of the package in question contained a USPS tracking number. *See* U.S.'s Ex. 2. At the evidentiary hearing, Mr. Metke could not recall what postal scan he selected after the resident of 1608 North 33rd Street disclaimed interest in the package. Tr. 71, 81.

Undeliverable packages are routed to USPS's mail recovery center, where they are opened in an attempt to locate the actual owner or sender. Tr. 84–86.

## II. Procedural Background

On October 4, 2016, a federal grand jury indicted Ms. Vang for knowingly and intentionally distributing and attempting to distribute 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Indictment, ECF No. 1. The matter is assigned

[2] Regarding this testimony, the transcript indicates that, "in all likelihood [USPS] won't give you your package back." Tr. 70:5–8. This is a mistake. Mr. Metke testified that, if a person presented a receipt for the package but did not want her refund, in all likelihood the USPS **would** return the package. *See* Evidentiary hearing testimony 10:55:40–50.

to United States District Judge J.P. Stadtmueller for trial and to this Court for pretrial motions. Ms. Vang's trial has been adjourned.

On January 10, 2017, Ms. Vang filed a motion to suppress evidence. The motion was refiled a few weeks later to correct a technical error. *See* Defendant's Motion to Suppress, ECF No. 21. The parties submitted a list of stipulated facts but agreed that an evidentiary hearing was needed to resolve certain disputed material facts pertinent to the motion. The Court held the evidentiary hearing on January 25, 2017, and heard testimony from Mr. Metke. *See* Court Minutes for Evidentiary Hearing, ECF No. 22. During the evidentiary hearing, the Court received into evidence a number of exhibits. *See* U.S.'s Exs. 1–5; Def.'s Exs. A–K. Ms. Vang's suppression motion is now fully briefed and ready for disposition. *See* United States' Memorandum in Support of Denying Defendant's Motion to Suppress, ECF No. 29; Defendant's Reply in Support of Motion to Suppress, ECF No. 32.

## III. Discussion

The United States maintains that the postal inspector did not violate the Fourth Amendment when he opened the package without a warrant because he reasonably believed that the package had been abandoned. Alternatively, the United States contends that the methamphetamine contained in the package would have inevitably been discovered by law enforcement. The Court will address each argument in turn.

### A. Whether a reasonable person in the postal inspector's position would have believed that the defendant relinquished her property interests in the package

The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. "A search is generally considered unreasonable unless the government obtains a warrant issued upon probable cause." *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000) (citing *Joy v. Penn-Harris-Madison Sch. Corp.*, 212 F.3d 1052, 1058 (7th Cir. 2000); *United States v. Strache*, 202 F.3d 980, 984 (7th Cir. 2000)). "Abandoned property," however, "is not subject to Fourth Amendment protection." *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960); *Basinski*, 226 F.3d at 836). That is, "no person can have a reasonable expectation of privacy in an item that he has abandoned." *Basinski*, 226 F.3d at 836 (citing *Hester v. United States*, 265 U.S. 57, 58 (1924); *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996)).

"To demonstrate abandonment, the government must prove by a preponderance of the evidence that the defendant's voluntary words or actions would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item to be searched." *Pitts*, 322 F.3d at 456 (citing *Basinski*, 226 F.3d at 836). The test is objective and, therefore, "the defendant's subjective desire to later reclaim an item is irrelevant." *Id.*; *see also United States v. Rem*, 984 F.2d 806, 810–11 (7th Cir. 1993). Rather, the court must "look solely to the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government

agents involved in the search." *Pitts*, 322 F.3d at 456 (citing *Basinski*, 226 F.3d at 836). In determining whether an object has been abandoned, courts must consider the totality of the circumstances, paying "particular attention to explicit denials of ownership and to any physical relinquishment of the property." *Basinski*, 226 F.3d at 837 (citations omitted).

It is undisputed that the recipient relinquished his property interest in the package. Prior to opening the package, Mr. Metke learned that Mike Chung, the listed recipient, was not associated with the 33rd Street address, and no one with that name had registered a vehicle or requested a driver's license or identification card in Wisconsin. Moreover, the resident at 1608 North 33rd Street expressly denied ownership of the package. The issue then is whether the sender, through her words or actions, relinquished her property interests in the package.

The United States argues that the sender did not take any steps to maintain her privacy interest in the package, emphasizing the non-existence of the Ficher Street return address and the failure of the sender to list her telephone number on the mailing label. *See* U.S.'s Mem. 10–11. This conclusion, however, is unreasonable based on the information Mr. Metke possessed at the time he opened the package. Mr. Metke indicated that he researched the Ficher Street address and found that it did not exist in Fresno. That appears to be true. But searching for "1112 n. Ficher #101, Fresno, CA 93702" (the exact address listed on the mailing label) using Google Maps and Yahoo, two search engines Mr. Metke claimed to have used, does indeed return a valid address for "1112 North **Fisher** Street #101, Fresno, CA 93702." The

Fisher Street address is identical to the listed return address in every way save for one letter.[3] A reasonable postal inspector therefore would have concluded that the return address contained a misspelling—a common occurrence with mail parcels, *see* Tr. 52–53; *see also* U.S.'s Mem. 14 (acknowledging that "[s]light misspellings are commonplace")—not that the address did not exist. Put differently, a reasonable postal inspector would not infer an intent to relinquish rights in a package based on a minor misspelling of an actual address that was accurate in every other way (street number, cardinal direction, apartment number, city, zip code, and five out of the six letters of the street name) and a failure to list a phone number.

Because Mr. Metke unreasonably determined that the return address did not exist, he did not make any efforts to investigate the valid Fisher Street address prior to opening the package. Importantly, he did not research whether Lisa Yang, the listed sender, was associated with that address. Mr. Metke therefore did not have a basis for concluding that the sender was unidentifiable. *See* U.S.'s Mem. 10.

The United States also argues that the package fit the profile of a drug parcel. *See id.* at 11–14. For example, the United States maintains that "Metke reasonably determined that the fictitious Ficher Street address was an intentional misspelling designed to deter law enforcement from tracing the package to the actual sender, not an innocent misspelling." *Id.* at 14. These facts may have helped support probable cause for obtaining a search warrant, but they do not suggest that

---

[3] Ms. Vang argues that the return address actually says "Fisher," not "Ficher." Def.'s Mot. 7. The Court does not agree with such a reading of the return address. The mailing label clearly says "1112 n. Ficher #101." *See* U.S.'s Ex. 2.

the sender abandoned the package. *See Pitts*, 322 F.3d at 459 ("There is nothing inherently wrong with a desire to remain anonymous when sending or receiving a package, and thus the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable."). Nor do they undercut the fact that 1112 North Fisher Street # 101 is a valid address in Fresno and that, prior to opening the package, Mr. Metke did not know whether Lisa Yang lived at that address. Believing that a package contains drugs does not make it abandoned.

The government's reliance on *United States v. Pitts* also is misplaced. In *Pitts*, the United States Court of Appeals for the Seventh Circuit held that a package was abandoned where the recipient expressly disavowed the package and the sender "launched the package into the stream of mail without any legitimate way of retrieving it." *Pitts*, 322 F.3d at 455–57. In this case, however, Ms. Vang did have a legitimate way of retrieving the package: she could have presented a copy of the mailing label at a post office in Fresno after the package had been returned from Milwaukee. Mr. Metke testified at the hearing that identification would not necessarily have been be required if the sender had a copy of the mailing label. *See* Tr. 68–70, 83–88. That USPS owed the sender money for failing to deliver the package on time would not prevent the sender from reclaiming the package either. The sender could simply decline the refund, negating the need to fill out any paperwork.

The United States further points out that there is no evidence that Ms. Vang tracked the package, maintained the mailing label, called USPS about the status of the package, or had a link to the Fisher Street address. *See* U.S.'s Mem. 11. But Mr. Metke did not know any of those facts at the time he opened the package. *See Rem*, 984 F.2d at 811 ("[T]he flow of information considered stops at the moment the . . . officer opened the [seized item].") Furthermore, Mr. Metke could not recall what postal scan he entered after the package was refused at the 33rd Street address. The United States therefore failed to establish that the sender would have had any reason to believe that the package was not delivered as addressed.

In sum, the Court finds that the United States has not demonstrated by a preponderance of the evidence that a reasonable postal inspector in Mr. Metke's position would have believed that the sender had abandoned the package. It is clear that Mr. Metke sincerely and accurately believed that the package contained drugs, and he is to be commended for his skills and diligence. Nevertheless, the sender of the package never explicitly denied ownership of the package, and the sender's conduct did not manifest an intent to relinquish her property interests.

**B. Whether the contents of the package would have inevitably been discovered by law enforcement**

The United States also argues that the methamphetamine in the package would have inevitably been discovered by law enforcement because a warrant to search the package certainly would have been issued had it been applied for. *See* U.S.'s Mem. 14–15 (citing, e.g., *United States v. Tejada*, 524 F.3d 809, 813–14 (7th Cir. 2008)). The Court disagrees. For one, the government's inevitable discovery

argument is perfunctory, limited to claiming that "[t]here is no doubt" the government has met its burden here. *See* U.S.'s Mem 15. Moreover, although the package had several characteristics suggesting that it may have been a drug parcel—for example, it was shipped via express mail from a state known for producing illegal drugs, it weighed more than five pounds, the postage cost over $50, and no signature was requested upon delivery—it was never subjected to a canine sniff test. And none of the other facts demonstrated that it was fairly probable that the package contained drugs. Based on the information provided by the United States, the Court finds that it was merely probable but not certain that a warrant would have issued on these facts.[4]

## IV. Conclusion

Accordingly, for all the foregoing reasons, the Court will recommend that the District Judge grant Ms. Vang's suppression motion.

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that Phoua Vang's Motion to Suppress, ECF No. 21, be **GRANTED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Crim. P. 59(b), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this Recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely

[4] Indeed, despite the facts suggesting that the package contained drugs, Mr. Metke could not have prevented the resident at the 33rd Street address from accepting delivery of the package on behalf of Mike Chung. *See* Tr. 55–56.

objection with the District Judge shall result in a waiver of your right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2017.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge