# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>v.<br><br>PHOUA VANG,<br><br>          Defendant. | Case No. 16-CR-162-JPS<br><br>**ORDER** |

    Defendant Phoua Vang ("Vang") is charged by indictment with one count of distribution and attempted distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. (Docket #1). The narcotics were located in a parcel shipped by Vang from California to Wisconsin. A postal inspector performed a warrantless search of the parcel and discovered them. Before the Court is the March 31, 2017 report and recommendation of Magistrate Judge David E. Jones as to Vang's motion to suppress, which he recommends should be granted. (Docket #33). The government filed an objection thereto on April 13, 2017, (Docket #34), Vang responded on April 27, 2017, (Docket #35), and the government declined to reply. The objection is now fully briefed and, for the reasons stated below, the objection will be overruled.

**1.   RELEVANT FACTS AND PROCEDURAL HISTORY**

    Jeffrey Metke ("Metke") has worked as an inspector for the United States Postal Service ("USPS") for approximately two years. Before moving to the USPS, Metke worked for twenty years in law enforcement, primarily in drug-trafficking investigations. As a postal inspector, Metke specializes in uncovering illegal controlled substances sent through the mail. He has discovered more than sixty such packages so far.

On Thursday, April 16, 2015, Metke recovered a package flagged for investigation from the USPS distribution facility in Milwaukee. The mailing label on the package listed the sender and recipient as follows:

|  FROM:  |  TO:  |
|---|---|
| Lisa Yang | Mike Chung |
| 1112 n. Ficher #101 | 1608 N. 33rd St. |
| Fresno, CA 93702 | Milwaukee, Wi 53208 |

The package was dropped off at a California post office within zip code 93701 on Wednesday, April 15, 2015, at 10:46.[1] It was sent via express mail, which provides guaranteed delivery by 10:30 a.m. the following day. The package weighed over fourteen pounds and cost $107.30 to ship.

Metke determined that the package had many of the characteristics of a typical drug package. He testified that postal inspectors commonly intercept packages containing narcotics which are sent by express mail, weigh over five pounds, and cost more than $50 to ship. Metke also noted the package was sent from California, a known source state for narcotics for Wisconsin. Additionally, the package was mailed from a post office with a zip code different from the listed sender's zip code. Metke testified that drug traffickers often employ this strategy in mailing narcotics to distance themselves from the package, should it be inspected.

Further, although the mailing label on the package had spaces for a phone number for both the sender and recipient, no telephone numbers were provided. And no signature was required upon delivery, even though that service was free due to the cost of shipping. Metke opined that drug traffickers may not include their contact information or request a signature

---

[1] The sender of the package did not mark the "AM" or "PM" checkbox on the mailing label.

at delivery, again in order to obscure their identities.

After recovering the package from the distribution facility, Metke researched the information listed for the sender and the recipient. Metke testified that drug traffickers often manipulate the parcel recipient's name as well as the name and address of the sender. Oftentimes there are only slight changes in a name or address, and these serve to conceal the parties responsible for the drug package.

First, Metke researched the recipient address using the Wisconsin Department of Transportation database and the Thompson Reuters CLEAR database. He determined that the recipient address, 1608 North 33rd Street, was a valid address in Milwaukee, but there was no record of a Mike Chung associated with that address. In fact, no one with the name Mike (or Michael) Chung had ever registered a vehicle or requested a driver's license or identification card in Wisconsin, and there was no record of a Mike or Michael Chung living in Wisconsin during the last twenty-five years.

Metke next determined that the sender's address, 1112 North Ficher Street, was not a valid address in Fresno and that a Lisa Yang was not associated with that address. Metke researched the Ficher Street address using the USPS address database, Google Maps, Yahoo, and the Thompson Reuters CLEAR database. Although Ficher Street does not exist in Fresno, a Google Maps or Yahoo search for "1112 n. Ficher #101, Fresno, CA 93702" returns as the very first item a valid address for "1112 North Fisher Street #101, Fresno, CA 93702." At the evidentiary hearing, Metke could not recall whether either search engine returned such results during his initial research.

The same day he recovered the package and conducted his research, Metke attempted delivery at the 33rd Street address in Milwaukee. A

woman answered the door and indicated that neither Mike Chung nor any other Chung lived at that residence. She further stated that she did not know anyone in Fresno or California. She told Metke the package was not hers and that he could open it.

Metke, still at the 33rd Street address, then opened the package and found more than one kilogram of pure methamphetamine in a clear vacuum-sealed package. He never applied for a search warrant and did not subject the package to a dog sniff prior to opening it, even though an officer at the scene had a K9 unit with him. After opening the package, Metke had a dog sniff performed—presumably on the inner vacuum-sealed package and not the closed, outer mailing package—to confirm the presence of drugs. Subsequent investigation linked the package to Vang, whose fingerprints were recovered from the inner packaging surrounding the methamphetamine. She was eventually arrested and admitted to mailing the package from California to Milwaukee.

Metke continued to investigate after finding the methamphetamine. He learned that the package had been paid for in cash and that no one had registered to obtain tracking information for it or called USPS to inquire about delivery. Metke testified that he learned at this time that 1112 North Fisher Street #101, Fresno, California 93702 is a valid address. He determined, however, that neither the claimed sender, Lisa Yang, nor Vang was associated with that address. Metke spoke with the owner of the apartment building at 1112 North Fisher Street in Fresno and discovered that another individual had lived in unit #101 with her family since 2014. The renter did not recognize Vang after being shown a photograph of her. Finally, Metke discovered that no address was ever listed for Vang in Fresno.

At the evidentiary hearing, Metke explained why he opened the package without first obtaining a warrant. He indicated that the package was undeliverable to the 33rd Street address and not returnable to Ms. Yang because the "Ficher" Street address did not exist in Fresno. Further, the mailing label did not contain a telephone number for the sender. Also, because the package was shipped via express mail and delivery was not made on time, USPS owed the sender the shipping cost. The package therefore could not simply be left at the return address, and the sender would have had to fill out a form to obtain the refund. Metke testified, however, that the sender also could get the package back from the post office by presenting a copy of the mailing label and, depending on the employee, some form of identification.

When a package is mailed via USPS, it is scanned upon delivery (or attempted delivery). A package that is not delivered to the listed address is scanned as "undeliverable as addressed" or "undeliverable as mailed." The mailing label of the subject parcel contained a USPS tracking number. At the evidentiary hearing, Metke could not recall what postal scan he selected after the resident of 1608 North 33rd Street disclaimed interest in the package. Undeliverable packages are routed to USPS's mail recovery center, where they are opened in an attempt to locate the actual owner or sender.

On January 10, 2017, Vang filed a motion to suppress the evidence obtained as a result of Metke's warrantless search of the package. Magistrate Jones held an evidentiary hearing on January 25, 2017, in which he received several exhibits and heard testimony from Metke. In his report and recommendation, Magistrate Jones concluded that Metke's search was unlawful because he did not have a reasonable belief that the parcel had been abandoned. (Docket #33 at 12). Further, Magistrate Jones rejected the

contention that discovery of the drugs was inevitable, making application of the exclusionary rule inappropriate. *Id.* at 12–13. As a result, Magistrate Jones recommended that the motion to suppress be granted. *Id.* at 13.

## 2. STANDARD OF REVIEW

When reviewing a magistrate's recommendation, this Court is obliged to analyze the recommendation *de novo*. 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* The Court's review encompasses both the magistrate's legal analysis and factual findings. *Id.*

## 3. ANALYSIS

### 3.1 Abandonment

The Fourth Amendment's protection against unreasonable searches and seizures extends to parcels sent in the mail. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). Absent a warrant supported by probable cause, searching a sealed package in the mail is presumptively unreasonable. *Id.* However, when a parcel has been abandoned, it is no longer entitled to Fourth Amendment protection because "no person can have a reasonable expectation of privacy in an item that he has abandoned." *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000).[2]

To establish that an item has been abandoned, "the government must prove by a preponderance of the evidence that the defendant's

---

[2] In passing, the government suggests that Vang must first establish a reasonable expectation of privacy in the contents of her parcel before it is required to put forward evidence of abandonment. (Docket #34 at 8). But as the sender of the package, it is indisputable that Vang had a protectable interest. *See United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988); *United States v. Penass*, No. 07-CR-168, 2007 WL 2688176, at *2 (E.D. Wis. Sept. 12, 2007) ("[I]t is well established that both senders and addressees of packages shipped in the mail or by common carrier have a reasonable expectation that the government will not open them en route.") (citing *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992)).

voluntary words or actions would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item to be searched." *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003). This is an objective test which assesses the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search. *Id.* The defendant's subjective intent is irrelevant. *Id.* The analysis accommodates the totality of the circumstances, but the Seventh Circuit instructs courts to "pay particular attention to explicit denials of ownership and to any physical relinquishment of the property." *Basinski*, 226 F.3d at 837.

In this case, Magistrate Jones found, and no one disputes, that the purported recipient of the parcel—Mike Chung—abandoned any interest he had in the package. (Docket #33 at 9). The operative inquiry is whether the sender, Vang, did so as well. Magistrate Jones says no abandonment occurred and that Metke's conclusion to the contrary was unreasonable under the circumstances. *Id.* Magistrate Jones noted that although 1112 North "Ficher" Street #101 does not exist in Fresno, the very first result returned on a Google Maps or Yahoo search of the sender's listed address reveals that 1112 North "Fisher" Street #101 does exist there. *Id.* In Magistrate Jones' view, because Metke says that he performed these internet searches (though he claims not to remember the actual results he received), "a reasonable postal inspector. . .would have concluded that the return address contained a misspelling—a common occurrence with mail parcels." *Id.* at 10. In the face of the search results, concluding that the address simply did not exist was not reasonable, according to the magistrate. *Id.* This erroneous conclusion in turn led Metke not to undertake

an investigation of the actual Fisher Street address to determine whether Lisa Yang was associated with that address. *Id.* Magistrate Jones determined that because Metke did not make this investigation prior to opening the parcel, he lacked a reasonable basis on which to conclude that the sender was unidentifiable, which would support a finding of abandonment. *Id.*

Also important to Magistrate Jones' conclusion was a comparison between Vang's case and *Pitts*, where the Seventh Circuit found abandonment after the defendant expressly disavowed the package and the sender "launched the package into the stream of mail without any legitimate way of retrieving it." *Pitts*, 322 F.3d at 456. In that case, the sender used a false return address and an alias, which would have prevented him from retrieving the package from the post office using the mailing label. *Id.* Vang, by contrast, could have retrieved this parcel by presenting a copy of the mailing label at a post office once the package was returned to Fresno. (Docket #33 at 11). Metke himself testified that she would not necessarily need identification to obtain the parcel if she had a copy of the mailing label, so the discrepancy between her name and the sender's name might not have had any effect. *Id.* Furthermore, although USPS would owe the sender a refund for failing to deliver the package, Magistrate Jones found that this would not actually prevent Vang from collecting it. *Id.*

Additionally, Magistrate Jones noted that although there was evidence that Vang did not track the package, did not hold on to the mailing label, and did not have any link to the Fisher Street address, Metke did not know any of these things at the time he opened the parcel. *Id.* at 12. Because the abandonment inquiry turns on what was known at the that time of the search and not what was later learned, these indicators served no function

in the magistrate's abandonment analysis. *Id.* (citing *United States v. Rem*, 984 F.2d 806, 811 (7th Cir. 1993)).

Finally, Magistrate Jones addressed the government's contention that Metke's search was reasonable because the parcel bore the hallmarks of a drug package. *Id.* In the government's view, the misspelling of the street name, along with other factors such as the package weight, the failure to provide a phone number, and using false names for the sender and recipient, indicated that the parcel likely contained narcotics. *Id.* Magistrate Jones observed that even if a search warrant could likely have been obtained on such representations, they did not thereby authorize a warrantless search of the parcel. *Id.* at 11. Only abandonment would permit a warrantless search, and the government had not, in Magistrate Jones' view, met its burden to show that abandonment occurred. *Id.*

Having reviewed the parties' submissions and the record in the case, the Court agrees with Magistrate Jones' analysis. The government's objections largely track the arguments it made to Magistrate Jones, and the Court finds them unavailing. First, the government contends that Magistrate Jones left out a critical fact—namely, that Metke performed an initial search to determine whether the purported sender, Lisa Yang, was associated with the address on the package. (Docket #34 at 3). But as Vang rightly points out, there is no "Ficher" Street in Fresno, and no one can be associated with a nonexistent address. The key here, as Magistrate Jones found, is that Metke ignored the obvious signs that a Fisher Street existed. This was unreasonable under the circumstances. The fact that Metke later compounded his initial error by searching in vain for a resident at a non-existent address does not make matters any better.

Next, the government points to the drug-related characteristics of the parcel. (Docket #34 at 10–11). This Court agrees with Magistrate Jones that these factors support only a probable-cause inquiry, not abandonment. At most, those characteristics might support the inference advanced by the government that the sender, a drug dealer, purposefully misspelled the return address to avoid detection. *Id.* But this conclusion, even if accurate, does not cure Metke's failure to investigate the extant Fisher Street address. In other words, although in a different case it might be reasonable for Metke to conclude that substituting the "c" for the "s" in "Fisher" was a purposeful misspelling by a drug trafficker, here he should have known that "Fisher" Street actually existed based on the initial searches he performed.[3] Armed with that information, he should not have relied on his hunch without further investigation.

Moreover, the Seventh Circuit in *Pitts* took pains to reject the notion that suspicious packages, such as those sent using fictitious names, lose Fourth Amendment protections. *Pitts*, 322 F.3d at 457–58. The operative question is whether the package is abandoned; if not, officers may do nothing without a warrant. The government cites no authority holding that suspicion that a package is a drug parcel means it can be considered abandoned. *See Villareal*, 963 F.2d at 774 ("[E]ven if government agents have probable cause to believe that there is contraband in a container sent by mail or common carrier, they generally cannot search it unless they first obtain a warrant[.]"); *People v. Pereira*, 150 Cal. App. 4th 1106, 1114 (Ca. Ct.

---

[3]Vang insists that the mailing label should be read with a "s" and not a "c," contrary to Magistrate Jones' findings. (Docket #35 at 6 n.1). The Court need not question Magistrate Jones' conclusion in this regard because it finds that the matter must be resolved in Vang's favor regardless.

App. 2007) ("[U]sing a fictitious name to escape detection of criminal activity does not necessarily constitute an abandonment of the property to which the name is affixed.").

Finally, the government points to facts not available to Metke when he decided to open the package. These include that Vang did not track the package, maintain the mailing label, or call to check on delivery. But whatever their value, none of these facts were known to Metke at the time of the search. *Rem*, 984 F.2d at 811 ("In order to determine whether a pre-search abandonment has occurred, the flow of information considered stops at the moment the police officer opened the [package]."). As Magistrate Jones found, here there was simply not enough evidence before Metke at that time to enable him to conclude that the property was irretrievable by the sender, whatever he may have later learned. *See Pitts*, 322 F.3d at 456, 459 (noting that at the time the package was opened, use of an alias and false return address was known to the officer and indicated that the package was "irretrievable"). Indeed, this point was emphasized in *Pereira*, a case cited by the government, where the California court found that the searching officer "never clearly indicated that when he opened the [teddy] bear he was aware that defendant had used a false name and return address on the package." *Pereira*, 150 Cal. App. 4th at 1114. Thus, the Court finds that the government has not met its burden to show, by a preponderance of the evidence, that Vang abandoned the subject parcel.

### 3.2 Inevitable Discovery

The government further asserts that even if Metke violated the Fourth Amendment, the inevitable discovery of the narcotics should preclude application of the exclusionary rule in this case. Under the inevitable discovery doctrine, illegally seized evidence need not be

suppressed if the government can prove by a preponderance of the evidence that the evidence inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 442–44 (1984). To satisfy this burden, the government must demonstrate (1) that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence, and (2) that it would have conducted a lawful search absent the challenged conduct. *United States v. Marrocco*, 578 F.3d 627, 638 (7th Cir. 2009). The government must show that a search warrant would have certainly—not merely probably—have been sought and granted. *United States v. Tejada*, 524 F.3d 809, 813–14 (7th Cir. 2008).

Magistrate Jones rejected the government's argument on this point as "perfunctory," noting that while the package had some drug-related characteristics, no dog sniff had been performed at the time of the search, and there were insufficient facts on which to conclude that it was "certain" that the government would seek a warrant. (Docket #33 at 12–13); *United States v. Pelletier*, 700 F.3d 1109, 1116 (7th Cir. 2012) ("[T]he government must show not only that it *could* have obtained a warrant, but also that it *would* have obtained a warrant."). Moreover, as Metke conceded in his testimony, he could not have prevented the homeowner at the recipient address from accepting the package despite his suspicion that it was a drug parcel. (Docket #33 at 13 n.4); (Docket #35 at 11–12).

Here again, the Court agrees with Magistrate Jones. Though the subject parcel bore many drug-package hallmarks, most of those factors—package weight, shipping cost, and source-state origin—can be consistent with innocent packages, as Metke testified. And while the government is correct that the search warrant in *Pitts* appears to have issued without a

positive dog sniff, *Pitts*, 322 F.3d at 452–53, it cannot credibly be disputed that dog sniffs are common features of warrant applications for suspected drug parcels.

Moreover, this case is unlike cases such as *Marrocco*, where the Seventh Circuit used a positive post-search dog sniff to conclude that a pre-search dog sniff would have been positive and given rise to probable cause. *Marrocco*, 578 F.3d at 638. In that case, officers searched a briefcase with drug money in it, closed the briefcase, and then brought a dog to perform a sniff. *Id.* at 630. Here, by contrast, the evidence appears to show that the K9 unit positively alerted only to the vacuum-sealed package within the mailing parcel. *See* (Docket #26 at 54). This gives far less confidence in what a pre-search sniff would have revealed as to the outer, intact parcel.

And even if this evidence indicated that a search warrant probably would have been issued, there is little suggesting that Metke or law enforcement officers were certain to seek one out. The government offers only speculation in this regard, without citation to any routine or procedure that would have led to a search warrant application. *See Pelletier*, 700 F.3d at 1117; *Marrocco*, 578 F.3d at 641. On the information available to Metke—drug-parcel markers uncorroborated by a dog sniff, an address associated with narcotics, statements of an informant, or other evidence—the Court cannot say that it would have been unreasonable for him or law enforcement not to seek a warrant. *Pelletier*, 700 F.3d at 1117. In fact, it seems Metke had no intention of applying for a warrant in this case, since he decided to violate the abandonment rule despite years of experience uncovering drug parcels. The Court therefore finds that there is insufficient evidence in the record to carry the government's burden on this point.

**4. CONCLUSION**

The Court is obliged to find that Metke performed an illegal search in this case and, as a result, the evidence he discovered must be suppressed.

Accordingly,

**IT IS ORDERED** that the United States' objection to Magistrate Judge David E. Jones' Report and Recommendation (Docket #34) be and the same is hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Magistrate Judge David E. Jones' Report and Recommendation (Docket #33) be and the same is hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that Defendant Phoua Vang's motion to suppress (Docket #21) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge